1136 United Airlines, Inc. v. Richard Young I please the court, counsel. Your Honors, I believe... Your name? Your name? Oh, I'm sorry. Thank you, sir. I'm Frank Bertuca on behalf of the injured Richard Young. I believe I have perhaps the only argument here this morning where I don't want this court to re-weigh the evidence. Well, that's refreshing. Yes, to a certain extent. I'm asking that you reinstate the Commission's decision, and that's based upon our contention that factual determinations, including the extent of wage differential award, the amount and the duration, is within the province of the Commission. I think that the Circuit Court improperly and erroneously vacated the Commission's award and asked that this court reverse them and reinstate the Commission award. It is our contention that, based upon the case law, that factual determinations, including calculations of wage differentials, are within the province and the Commission, and therefore, this case should be considered as a manifest way to the evidence case. Unlike my opponent, who has been convincing certainly the Circuit Court that it is going to be construed as a de novo review, I don't believe that's correct. Well, let me ask you this. Yes. The Commission's conclusion that Section 81, which we're talking about here, requires the wage differential award to be calculated as of the date of the hearing. Isn't that a matter of statutory construction, a question of law? Isn't that finding that it has to be determined as of the date of the hearing? Isn't that a legal issue? I agree with you. All right. Yes. It's a de novo review. That's not a manifest way. If, in fact, we're getting to... Is that what you're taking issue with? No, not significantly, no, Your Honor. I mean, I will certainly concede that that is not a strong part of my argument. I think that though my argument, it being a manifest way to the evidence, is consistent with the case law that... Well, the Circuit Court rejected it. The Circuit Court here in this case reversed the Commission. Correct. And you're wanting the Commission's decision to be reinstated, right? Correct. Okay. So why isn't that a significant part or concern to you? Well, quite honestly, Your Honor, I don't think that the Katzen's decision quite creates the obligation on the Commission that the Circuit Court does. I think the Katzen's decision basically says that at the time of hearing, both parties should be providing evidence of long-term earning capacity. And I think that both parties had that opportunity. And I think that the Commission then, with their discretion, ultimately rendered a decision based upon all of that evidence. And that's my main point of contention with the Circuit Court, is that the Commission ultimately is the decider of these issues. And they did decide these issues. With respect to the actual factual issues that ultimately, I think, the Commission decided, is that they didn't find, and I admit this is inference, they didn't find that there was sufficient evidence to extrapolate a wage differential, in this case, eight years after the date of hearing. And I think that that is well supported by the evidence. What does 8D1 say about how you're supposed to calculate wage differential? In terms of, you take the average earnings in the full performance, well, first, excuse me, if the injured worker is incapacitated from his usual and customary employment, then you take the average earnings in the full capacity of his job at the time of injury, and the average earnings that he could or might be able to earn in some job that is within his physical capacity. So you're supposed to take the average earnings that he is able to earn in the performance of his duties and his occupation in which he was engaged at the time of the accident. Yes. Okay. And the average amount which he is earning or is able to earn in some suitable employment or business after the accident. So is he supposed to take into consideration what he might be able to earn in the future in his usual occupation, or is it supposed to be what he actually is earning at the time of his accident? I believe 8D1 is exactly, I think, what you're suggesting is what he is able to earn at the time that this is being determined, at the time of injury. Well, that's a question of law, because that's not what the arbitrator did. And the commission said that's not what you're supposed to do. You're supposed to calculate the wage differential based upon what he is earning at the time of the accident versus what he should be earning at the time of the accident from his usual occupation or time of the hearing. And then said you don't have a graduated wage differential award. That's not provided for. Correct. Is there any case that says it is? No. Well, that's a question of law, isn't it? Yes, I agree. Okay. And that's a de novo review. Again, I don't disagree with Your Honor. I think that the Kasson's case and us interpreting the Kasson's case without the benefit of a case on this particular issue has left me somewhat guessing. I do give a lot of deference to the Supreme Court saying that logically the evidence of long-term earning capacity needs to be presented at the time of arbitration. I think that was done in this particular case. I also agree with the commission, though, that on the hundreds of thousands of cases where there have been wage differentials awarded, there is not one case that is consistent with what this arbitrator has done. And I think for good reason. I think that based upon all of these cases where the commission has refused to speculate, go beyond what they feel is convincing at the date of hearing,  I think that although Kasson's does tell us that this should be considered at time of arbitration, it doesn't go so far to then say the commission should extrapolate wage differentials over 8, 10, 12, how many years into the future. I think that that was a mistake, and I think the circuit court ultimately erroneously concluded that that was what was supposed to be done. In addition to the question of law, I mean, if ultimately the court does agree that the circuit court should be reversed, I ultimately agree with that. And the alternative, if we are looking at the facts, I think that this should be remanded to the commission for specific findings on the issues of respondents, United Airlines' expert with respect to her opinions as to long-term earnings capacity. I don't think that it was specifically decided. If we are ultimately saying that they have the ultimate ability to make these inferences on the big issue, and their decision is correct, then we don't get to this. But if we disagree that they don't have the discretion to ultimately decide the big issues, the big conclusions, then I think it's appropriate that they should also be making those determinations on what is this gentleman's long-term earning capacity, what is the trustworthiness of her testimony about future earning capacity, what is the effect of the overtime, which the Kassens case should be determined, and they provided no evidence about the overtime, specifically saying we have provided ultimately a conclusion about long-term earning capacity in violation of Kassens, which says overtime should be included. So in the event that this Court does find that the circuit court was correct, I ask that you do remand it to the commission with specific findings to make those findings, ultimately to have this to be consistent. And, you know, as an aside, I think that the ultimate effect of this decision is against the spirit of the Act. The spirit of the Act, again, is for the financial security of the injured worker, and that in this case, in this decision, I do not believe that this ultimately follows the spirit of the Act. This creates a situation where he's awarded a temporary wage differential that stops. I don't think there's any case where this has ever occurred before. And then he has no other compensation. He's locked into a wage rate that was set by the bankruptcy court, while all of his other co-workers are enjoying the benefits of what are likely to be increases in their wages over those years. I ask that you reverse the circuit court and reinstate the commission's decision. Thank you. Thank you, Counsel. May it please the Court, Timothy McNally on behalf of United Airlines. I've read the commission decision here probably no less than 100 times, and no matter how many times I read it, and it doesn't take terribly long, it's just a paragraph, but it's clear that the commission never found that the evidence on the issue of future earning capacity was speculative. It's just not there. I believe that this is a case for de novo review. Even if it wasn't speculative, just assume that it wasn't speculative and it was absolutely certain. Doesn't AD1 indicate that it's to be determined at the time of the hearing? The Kasson's court tells us that the initial hearing is the time, and it's the only time that the parties can submit evidence on the issue of future earning capacity. I believe they used the term long-term earning capacity, so I would take that to mean post-hearing earning capacity. And since we only have one opportunity in this case, the initial hearing, United was following the Kasson's court direction. Why do you say you only have one time? What's 19-H for? 19-H, I think the case law is fairly well settled now that I have to be able to show a change in physical disability as opposed to economic disability to be successful under 19-H. This case goes to the two-pronged wage differential test that the courts have really adhered to for over a century. We have to show, or Petitioner has to show, a partial incapacity, the ability to return to the previous employment, as well as the impairment to earning capacity. The second prong, that's the economic test. That's the test where the court in Kasson's told us that the Commission and the arbitrators have to function in the same manner as judges and juries would in claims for lost wages and tort claims. I think one point in this case makes the Commission's function under Kasson's particularly clear. Mr. Young was set for a raise nine days after the hearing. Ms. Cooney testified on March 10, 2010, that nine days later, on March 15, he would be receiving a raise, I believe it was from $10.61 per hour to $11.07 per hour. Mr. Young, in his testimony, agreed on the amount and he agreed on the date. So if we think about that evidence, we have complete agreement on the date the raise is going to occur, nine days after hearing, we have complete agreement on the amount. The Kasson's court has told us that in an 8D1 case, because we cannot come back in under Section 19H or any other section of the Act, that this is our one opportunity to present this evidence. In fact, the Kasson's court tells us of course you can present the evidence. That's what Kasson's says. But the question is what does the Commission do with that evidence? Do they create a graduated wage differential like the circuit court did here, or do they consider all that evidence in determining what the wage differential should be at the time of the Commission decision? I think it depends on the evidence in a certain case. And in this case, the evidence does show, I mean, it's clear that he was a ramp serviceman before the accident. He was at the top of the scale for that position. Because he was at the top of the scale, his wages would only be expected to rise modestly into the future. After the accident, he's employed as a station's operations representative, but he starts at the bottom of the scale. So his wages are expected to rise much more quickly until he reaches the top of the scale for that position. So the award in this case, it does make sense for it to be a graduated wage differential because as Ms. Cooney testified, based on the collective bargaining agreements, the wage differential does in fact shrink based on this evidence on a yearly basis until we get to 2018 when under the agreements, it showed that he would be earning more as an SOR than he would have had he remained in ramp service. So I don't think it has to be calculated on a graduated scale in every case. But if the evidence supports it, I believe the Kasson's court has told us that this evidence is proper and the Commission can project a wage differential into the future. The counsel in attacking the Commission's decision brings up many points about what if there's a bankruptcy in the future? What if there's a merger in the future? What if there's a renegotiation? How could this affect the wage differential analysis? And I think he fails to consider two very important points. First, there seems to be an assumption that anything that happens in the future to Mr. Young will negatively impact his earning capacity. But it's just as likely that United would have an overly profitable year causing the unions to want to renegotiate a higher wage. But just as under Kasson's, I cannot come back in if that happens, Mr. Young cannot come back in if something negative happens. Kasson's has told us that the legislature has not currently authorized infinite opportunities to correct these awards. So even though we know he's getting a raise in nine days, in one year, in three years, in five years, in eight years, we can't come back to the Commission. The legislature has not permitted us to come back to the Commission. So the initial hearing is all we have to present this evidence. Second, this case has another unique aspect. In fact, we don't see many cases where you have two collective bargaining agreements and the same employer for the pre-injury and post-injury job. But here we also have another fact that's very important. While these groups are covered by different agreements, they're represented by the same union. And since 1999, since these groups have been covered by the same union, they've never received a change in pay that was different from one group than the other. They're always equal. So we can expect that if anything does change in the future based on this course of dealing, that the wage differential analysis will remain the same in this case. The differences in pay will be equal for both groups. And this has been constant since 1999. And if we think about that, this airline has gone through a pretty tumultuous time since 1999. We've had a bankruptcy. We've had September 11th. But despite this, these groups receive the exact same differences in pay. We should be able to expect this to occur in the future. I think Young's position in this case is the most speculative of all. He wants us to say, despite the two collective bargaining agreements, despite the testimony of Ms. Cooney, despite this course of dealing by the union, we should assume that his wage differential will be stagnant, as it was in the date of hearing, for the remainder of time. So despite the fact that we know this is going up in nine days and five years and eight years, we should just assume that his wage differential will remain the same as it was of the date of hearing until the end of his natural life. I think that's the most speculative position of all. A quick word on the issue of overtime. Mr. Young has contended that his earnings should actually be increased based on overtime. And if we look at the evidence on overtime, Mr. Young stated at hearing that as a ramp serviceman, he worked approximately 44 hours a week. And as an SOR, he worked approximately 40 hours a week. Now, he only testified about mandatory overtime. He didn't mention whether voluntary was available. But he also entered wage records from 2002, 2003, and 2004 into evidence, the period right before the injury. If we look at these documents, they show that there was no regularity of earning capacity. These documents conflicted directly with his testimony. They show that in the three years prior to the accident, he only worked overtime during 18 pay periods. The majority of pay periods, he didn't work any overtime. So just as he wants us to disregard these collective bargaining agreements and assume his wage differential will remain stagnant in arguing for overtime, he also wants us to disregard the wage statements that he put into the record that shows that he did not, in fact, work 44 hours a week in ramp service. So under Cassin's, the Supreme Court has clearly told us that the initial hearing is the time, and it's the only time we'll ever have to introduce this evidence. Clearly, I think under Cassin's, a wage differential can be calculated past the date of hearing. The Cassin's Court specifically spoke of long-term earning capacity. That would mean post-hearing earning capacity. If the evidence in this case does not permit a calculation of the wage differential into the future, it's difficult to fathom the case that would. I would ask that you affirm the circuit court's order in its entirety, unless there are any other questions. What's the best case that you have that would stand for the proposition that the wage differential award can be graduated, as opposed to a fixed amount as determined by the commission applying 8D1, that you only get one crack at this, an amount is awarded. You want installment awards or terminating changing in the future. What's the best case that you've got that stands for the proposition that the Act authorizes that? I believe I would have to say that is the Cassin's case, where the Cassin's Court says that this could result in an imperfect award. It could. But the arbitrators and commissioners have to act just as juries and judges would in a tort case. So the evidence in some cases might stand for the proposition that there's a set award based on this future earning capacity. But in this case, I think the evidence does stand for the fact that there's going to be an impairment to earning capacity, and it is going to shrink based on the collective bargaining agreement for eight years. I think that's not based on Ms. Cooney's opinion, as Young suggests. This is based on the express provisions of collective bargaining agreements to which both the union and United are bound. But Cassin's doesn't authorize installment awards. It doesn't specifically address installment awards. It does address the Act itself. I would argue that the courts have adhered to this two-part wage differential test, the second part being this test about proving impairment to earning capacity. And the courts in Franklin County Coal and Sroka have told us that if there's no impairment to earning capacity, then the employee is not entitled to the compensation. So I think if we look at the commission's function in evaluating the second part of the wage differential, and we look at their powers under the Act to adjudicate disputed questions of law and fact, I would submit that they are authorized to make findings into the future under Cassin's. What do you make of the phrase in 18-1 that says to be calculated based upon the average amount which he is earning or is able to earn in some suitable employment or business after the accident? Is that your justification for an installment award? Well, that's what we're talking about. I take that to mean we're talking about earning capacity. We're not talking about what he is earning on the date of hearing. But that's not my question. My question is how do you interpret that? Now, if a man is capable of earning $15 an hour, but for some reason took a job for $8 an hour,  the disjunct of what he's capable of earning, $15, you don't calculate it based on the $8 he's making. Sure. But if he's just making $8, and there is no evidence as to what he's capable of doing that's above that, you base it on the $8. But you don't do staggered awards because he's making $8 today, but he could get a raise next year to $9, and the year after that to $10, and the year after that $11, and start doing installment awards. There's no case to authorize that. I would submit to you then that the appropriate measure would then be to say that United established that he has an earning capacity of $20 or $21. Now we're getting to manifest weight. We're not getting to the de novo review, are we? I don't concede the point that the Act or CASAs do not permit a graduated award. When we do have evidence in this case where he is going to get a raise nine days later, where he's going to get a raise one year, two years later, it just creates a race to the courthouse for petitioners. They can race in right away to set their wage threshold. What does that D1 mean when it says average amount? What is the word average? How does that play into this? I mean, you've put in evidence that his wages are going to go up over time, that his earning capacity is going to rise, but 8D1 says based on the average. Sure. The average amount in which he is earning or is able to earn in some suitable employment or business after the accident. So I presume we could have a case where there is evidence. It's one of the cases discussed earlier where he could be working in machinery or there's vocational progress reports or labor market surveys that suggest there are a variety of jobs available. This case is different in so much as we have the evidence. It's in the collective bargaining agreements. We don't need to determine the average amount. The documents to show us what the wage differential is are in evidence. That's what 8D1 says you do, the average amount which he is earning or is able to earn. Correct. And I think the evidence in this case shows that the average amount that he is able to earn will be consistent with the collective bargaining agreements going into the future. That's not an average. That's not any average. I mean, wouldn't it be a different situation if the commission had said, okay, we're going to take all these steps, the different wages he'll earn over these next 10 years, we're going to average those and come up with an average amount that you proved, but beginning now, that's his, we find his future earning capacity to be, and he gets so much. And perhaps that's the same for life. And perhaps that is something that the commission would be authorized to do. Thank you, counsel. I have mostly factual responses to counsel's argument. First, he talked about how in this case it's unique because these two bargaining units, in the event that they would get raises in the future, that historically those raises would stay in a pattern. And so, therefore, this particular gentleman, Mr. Young, he would be the beneficiary of these future raises from these future collective bargaining agreements. That's entirely incorrect. Page 6 of counsel's brief shows that from 2009 to 2020, their projection will be that he has already hit his maximum rate in the RAMP service, the pre-injury job. He will be getting a one penny per year raise despite every other worker's raise from not only the next collective bargaining agreement, the one after that. There is no modest increases because he's already at the max rate for the RAMP service. So really, his pre-injury wages are not moving up as his post-injury raises are moving up. He's stuck here. This one's moving up. That's why it's going to catch up, hypothetically, in 2018. That's not going to happen for any other worker because they are going to get, if the maximum rate in RAMP service increases, they are going to be at a higher rate. He is stuck at the bankruptcy set maximum wage rate for RAMP service in this case decision pursuant to the arbitrator. And that is really what is going on in terms of, I'm not criticizing the commission's inability to project a wage differential in the light of bankruptcy or in the light of a merger. That particular cross-examination of Ms. Cooney showed how speculative her opinion was. It is my contention that she gave the court history of what occurred before the bankruptcy. There was a pattern of dealings, and yes, there was a pattern, and it ended at the bankruptcy. So the contract, the collective bargaining agreement before the arbitrator, was one with wages set by the bankruptcy court. And it was a collective bargaining agreement that had already expired and was already subject to renegotiation. And she had no clue as to what was on the table. She did not take part or wasn't part of that bargaining team. And the arbitrator said, no, despite all of that, despite the potential merger, despite the bankruptcy setting the wages, she has given him convincing testimony of a pattern that has not changed. I submit to you, that is the criticism of Ms. Cooney's decision or Ms. Cooney's opinion. And the court accepting Ms. Cooney's opinion, this is not a situation where she could speculate what the wages were going to be in the future. And not only wasn't it for the next contract, these contracts only lasted three to five years. That is in the record. So she is not only going beyond the one that they haven't approved yet, but the next one and the next one. I submit to you, there's never been a commission decision that has gone this far. Because of the obvious inherent speculation, this is not a good case to suggest that this is a way to further describe what Cassin's wants. This is such a unique, horrible situation to try to extrapolate two collective bargaining agreements into a wage differential beyond the date of hearing. Because of the fact that the actual wages that we're looking at were set by the bankruptcy court. So meanwhile, Mr. Young's wage differential is set by the bankruptcy court, and everybody else's wages are increasing because we're all into a new contract, with the exception of his wage differential. Now, counsel says, I'm in disagreement with the commission's award, because if the commission would have accepted what I proposed, or because it was too much of a windfall for the commission to accept what I proposed. I don't disagree with counsel that I proposed more to the commission based upon the case law than what the commission wrote. But I disagree with counsel that we actually agreed with the commission's decision, because we respect the original tenet, that the notion that the commission weighs these facts, and it is the province of the commission to properly apply the law and tell us what a wage differential should be. And even though I'm not in total agreement with what the commission decided, I think that they made a sound decision. I think it is within their discretion, and I think it's based on what the proper determination of 8D1 is, and what their expectation of not only the facts of this case should be, and the wage differential in this case, but also what other cases should follow now in a post-Cassin's Court situation. Counsel, your time is up. Thank you. We'll stand in recess until 1.30.